IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRISTOPHER D.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:20cv00651 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Christopher D. ("Christopher") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Christopher alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) weigh a prior unfavorable decision; (2) weigh the opinion of a treating nurse practitioner; and (3) assess his activities of daily living.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 17) and **DENYING** Christopher's Motion for Summary Judgment (Dkt. 15).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

support the Commissioner's conclusion that Christopher failed to demonstrate that he was disabled under the Act.³ Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Christopher filed for DIB in August 2018, claiming that his disability began on May 18, 2018, due to diabetes⁴, diabetic neuropathy, high blood pressure, arthritis, herniated disc, nerve damage in back and spine, bone marrow changes in spine, panic attacks, chronic pain, and

---

³ The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

⁴ In his Disability Report, Christopher wrote he had type 2 diabetes (R. 228), however, during the hearing with the ALJ Christopher stated he had type 1 diabetes (R. 50).

2

depression. R. 181, 184, 228. Christopher's date last insured is September 30, 2023; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 10; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Christopher's applications at the initial and reconsideration levels of administrative review. R. 85–97, 100–12. On March 11, 2020, ALJ Michael Dennard held a hearing to consider Christopher's claim for DIB. R. 40–68. Counsel represented Christopher at the hearing, which included testimony from vocational expert Paula Day. On March 31, 2020, the ALJ entered his decision analyzing Christopher's claims under the familiar five-step process[5] and denying his claim for benefits.[6] R. 10–29.

The ALJ found that Christopher was insured at the time of the alleged onset and that he suffered from the severe impairments of diabetes mellitus, peripheral neuropathy, and spine disorders. R. 13. Regarding his mental impairments, Christopher's anxiety and depression were non-severe. Id. Likewise, the ALJ found Christopher had no limitations in the broad functional areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 13–15. The ALJ determined that Christopher's mental and physical impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 16. The ALJ specifically

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[6] Christopher was 42 years old on his alleged onset date and 44 years old the date of the ALJ's opinion, making him a younger person under the Act. R. 27.

considered listing 1.04 (disorders of the spine), listing 9.00 (endocrine disorders), and listing 11.14 (peripheral neuropathy). The ALJ also considered Christopher's diabetes mellitus under SSR 14-2p, including considering his diabetes mellitus at all stages of the sequential evaluation. Id.

The ALJ concluded that Christopher retained the residual functional capacity ("RFC") to perform a limited range of light work, including lifting or carrying 20 pounds occasionally and 10 pounds frequently, sitting for six hours and standing/walking for six hours in an eight-hour day. R. 17. Christopher can also push or pull as much as he can carry. He can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl, and can occasionally work at unprotected heights, around moving mechanical parts, around hazardous machinery, and in vibration. Id. Christopher can never climb ladders, ropes, or scaffolds. Id. The ALJ determined that Christopher had no past relevant work but could perform jobs that exist in significant numbers in the national economy, such as addresser, document preparer, and surveillance system monitor. R. 28. Thus, the ALJ determined that Christopher was not disabled. R. 29. Christopher appealed the ALJ's decision, and the Appeals Council denied his request for review on September 14, 2020. R 1–4.

## ANALYSIS

Christopher alleges that the ALJ failed to properly weigh both a prior unfavorable ALJ decision and the opinion of his treating nurse practitioner, Vanessa Coake, FNP–C. Christopher also alleges the ALJ improperly assessed his activities of daily living.

### A. Medical History Overview

1. Medical Treatment

Christopher has a history of back pain and diabetes mellitus and has developed complications from his diabetes including peripheral neuropathy and diabetic retinopathy. During the relevant period, Christopher complained to his providers of back pain, and on exam had tenderness in his spine, but generally normal gait and station and intact motor function. R. 298, 751, 755, 758, 1341. An MRI of Christopher's lumbar spine in August 2018 showed mild narrowing of the L4–L5 disc space with posterior disc herniation, which did not appear to compress the nerve root. R. 793. He was referred for a lumbar spine surgical evaluation in September 2018, had stable gait, intact motor function, negative straight leg test, normal reflexes, and no sensory deficits on exam, and was diagnosed with lumbar radiculopathy due to a herniated disc. R. 1341–42. The provider indicated he would like to try physical therapy prior to considering surgery. R. 1342.

Christopher was diagnosed with diabetes mellitus in 2009 and prescribed insulin, but had difficulty controlling his blood sugar, visiting the emergency room multiple times due to blood sugar issues in 2018 and 2019. R. 50, 1405, 1446–47, 1593. Though his doctor prescribed an insulin pump, Christopher had difficulty using it and reported generally relying on insulin injections. R. 1476–90. In March 2019, Christopher, complaining of seeing flashes and floaters, saw an optometrist who diagnosed mild nonproliferative diabetic retinopathy without macular edema. R. 1370–73. The optometrist educated Christopher about monitoring his blood sugar appropriately and told him to follow up in a year for an annual eye exam. R. 1373.

2. Medical Opinions

In February and June 2019, respectively, state agency physicians Jack Hutcheson, M.D. and William Rutheford, M.D., reviewed the record and found Christopher capable of a limited range of light work. The ALJ found these opinions persuasive. R. 23. In February and June 2019,

state agency psychologists Stephen Saxby, Ph.D. and Joseph Leizer, Ph.D., found that Christopher's anxiety and depression were non-severe impairments. The ALJ likewise found these opinions persuasive. Id.

Ms. Coake, Christopher's treating nurse practitioner, provided multiple opinions in 2018 and 2019, none of which the ALJ found persuasive. R. 24–25. Ms. Coake's opinions included a note dated May 18, 2018 that Christopher should avoid heavy lifting and frequent bending when he returned to work, a Clinical Assessment of Pain dated March 14, 2019, and Lumbar Spine and Diabetes Mellitus Medical Source Statements, both dated April 1, 2019, indicating work preclusive limitations, including that Christopher would miss more than four days per month due to his impairments. R. 762, 1366, 1376–79, 1381–84.

### B. Acquiescence Ruling

Christopher argues that the ALJ erred by finding that a prior unfavorable decision from September 2014 was persuasive. Specifically, Christopher states that the ALJ wrongly determined that the evidence dated after the prior decision did not show a significant change in his health and functional ability. Christopher also argues that his diabetes mellitus and related conditions of neuropathy and retinopathy have deteriorated over time, as well as his lumbar radiculopathy, which the previous ALJ did not consider a severe impairment.

Acquiescence Ruling 00-1(4) provides that in adjudicating a subsequent disability claim, the ALJ must consider a prior decision and give it "appropriate weight in light of all relevant facts and circumstances." AR 00-1(4), 2000 WL 43774. In determining the weight to give a prior finding, an ALJ should consider: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time

that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim. "An ALJ does not necessarily have to walk through each factor in order to comply with AR 00-1(4); rather, reviewing and evaluating all the evidence presented at the correct standard complies with the acquiescence ruling." Cuffee v. Berryhill, 680 F. App'x 156, 159 (4th Cir. 2017) (quoting Grant v. Colvin, 2014 WL 852080, at * 7 (E.D. Va. Mar. 4, 2014)).

In the September 2014 decision, ALJ Sprague found Christopher capable of a limited range of light work. R. 76. Specifically, ALJ Sprague found Christopher could occasionally climb ladders, ropes, and scaffolds, and could frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl in a work environment where he avoids concentrated exposure to unprotected heights and dangerous machinery, as well as extreme heat, cold, humidity, wetness, and vibration. Id.

In the March 2020 opinion, the ALJ here also found Christopher capable of a limited range of light work. R. 17. However, in the RFC, the ALJ imposed some additional limitations, including that Christopher can never climb ladders, ropes, or scaffolds (instead of occasionally), and can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl (instead of frequently). Id. Regarding the previous decision, the ALJ determined that, despite the prior decision being issued in 2014, the evidence after that date does not show a significant change in Christopher's health and functional ability by 2018. R. 23. In support, the ALJ writes:

> [Christopher] continued to have diabetes mellitus with peripheral neuropathy and lumbar degenerative disc disease with the same general level of treatment in 2014, or 2018 through 2020. His treatment was still mainly with a primary care provider or refills of his

7

   chronic medication with occasional visits to the emergency department for blood sugar control problems.

R. 23. This is supported by the medical record, which the ALJ described as essentially routine and conservative. R. 25. The ALJ noted Christopher's primary care provider generally treated his diabetes with insulin, recommendations regarding monitoring and testing, and suggested lifestyle changes, and included a new medication that improved his diabetic ketoacidosis in 2018 through 2020.[7] R. 26. Likewise, surgery was not recommended for Christopher's lumbar spine, and physical examinations showed a normal gait. R. 26. The ALJ also emphasized that the RFC was similar in both ALJ opinions, a reduced range of light work with "generally the same postural and environmental limitations." R. 23. Further, contrary to Christopher's complaint that the ALJ did not consider the "medical evidence of 2018, 2019, and 2020 in his determination to afford persuasion to the decision of the prior ALJ" the ALJ specifically noted that its "possible that [Christopher's] impairments were subject to change over time," (R. 23) and provided a detailed medical treatment analysis for 2018–2020.

  The ALJ considered the factors outlined in Acquiescence Ruling 00-1(4) and his determination that the 2014 decision denying disability is persuasive is supported by substantial evidence.

### C. Medical Opinion Evidence

  Christopher argues that the ALJ erred in his consideration of Ms. Coake's opinions, emphasizing that Ms. Coake's Medical Source Statements and her Pain Assessment all found work-preclusive limitations. Without citing to any specific medical records, Christopher writes that Ms. Coake's opinions are "supported by a great volume of medical evidence from many

---

[7] During the hearing with the ALJ, counsel for Christopher stated that the medication Nortriptyline has helped his diabetic ketoacidosis.

8

medical sources other than the treatment that she provided." Pl.'s Br. at 7, Dkt. 7. The Commissioner counters that the ALJ followed the appropriate regulations in evaluating Ms. Coake's opinions and points out that Christopher cites to case law "predat[ing] the . . . new regulatory scheme" to support his arguments.

Christopher submitted his application in August 2018, thus 20 C.F.R. §§ 404.1520c governs how the ALJ considered the medical opinions here.[8] When making an RFC assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide, however, that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. Id. "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain the consideration of the other three factors, including

---

[8] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017. For claims filed before this date, the rules in § 404.1527 apply.

relationship with the claimant, specialization, and other factors such as an understanding of the disability program's policies and evidentiary requirements. Id.[9]

Here, the ALJ properly considered Ms. Coake's opinions under the new regulations. The ALJ discussed each of her opinions and provided specific reasons why he found none of them persuasive. Regarding her May 2018 opinion that Christopher should avoid heavy lifting and frequent bending when he returned to work, the ALJ noted that the opinion was not persuasive because it had been "written for a short period during an acute flare of back pain" and did not define heavy lifting or frequent bending in vocational terms. R. 24. Regarding Ms. Coake's March 14, 2019 Pain Assessment, the ALJ found the opinion not persuasive because it was not consistent with or fully supported by the medical evidence and contained multiple undefined terms. Id. Regarding Ms. Coake's Lumbar Spine Medical Source Statement, the ALJ indicated it was not persuasive because it was not supported by the medical evidence, including that, while Christopher had lower back pain from lumbar degenerative disc disease, he had never been recommended for surgery, had declined a physical therapy program, and physical examinations generally showed a normal gait, strength, sensation, and balance, with no assistive device. Id. Regarding the Diabetes Mellitus Medical Source Statements, the ALJ likewise found it not persuasive because it was not supported by the medical evidence, including that, though Christopher complained of peripheral neuropathy, it was not evidenced in physical exams by his medical providers, which showed generally showed normal sensations, gait, and strength. R. 25–26. The ALJ's conclusions are supported by the record, including that examinations showing

---

[9] An exception to this is that when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well–supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

10

spine tenderness, but generally normal gait and station and intact motor function. R. 298, 751, 755, 758, 1341–42. The ALJ also acknowledged that though Christopher's blood sugar was erratic, he was prescribed insulin, lifestyle changes, and monitoring. R. 25. Similarly, though he had diabetic retinopathy, his optometrist had only recommended yearly monitoring. Id. Here, the ALJ sufficiently explained his consideration of Ms. Coake's opinions; indeed, the ALJ did more than the regulations require by considering each of her medical opinions individually.[10] Likewise, the ALJ's determination was supported by the state agency doctors, who found Christopher capable of a limited range of light work.

Here, the ALJ adequately explained why he found the opinions not persuasive, and I will not reweigh the evidence. The RFC assessment lies squarely with the ALJ, not with any medical provider or examiner. 20 C.F.R. §§ 404.1546(c), 416.946(c); see Felton-Miller v. Astrue, 459 F. App'x 226, 230-231 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). To this end, when conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the Court defers to the ALJ's decision. Shinaberry v. Saul, 952 F.3d 113, 123 (4th Cir. 2020).

### D. Activities of Daily Living

Christopher writes that the ALJ erred by finding his activities of daily living not

---

[10] As the Regulations explain, because of the:

> voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c

limited to the extent one would expect, but without explaining "what one would in fact expect." Pl.'s Br. at 9, Dkt. 16. The Commissioner counters that the ALJ appropriately considered Christopher's daily activities as one factor, among others, in evaluating his subjective complaints.

Of course, the ability to do various daily activities, does not dictate that a claimant can also work full-time. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 271 (4th Cir. 2017) (finding that a claimant's ability to perform some daily activities, such as a limited amount of laundry or cooking, does not mean she is able to "persist through an eight-hour workday"). Still, the regulations specifically provide that daily activities can be considered by an ALJ, among other factors, in determining the extent to which a claimant's symptoms limit his capacity for work, and whether a claimant can do more work than he alleges. See 20 C.F.R. § 404.1529(c). This is the ALJ's job, to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). The ALJ wrote:

> [Christopher] reported performing yard work, doing the laundry, shopping for groceries, and preparing simple meals in his function report. On April 18, 2019, he discussed his plans to go out of town and fly on a plane in a few weeks. Given the complaints of disabling symptoms and limitations, such activities are not limited to the extent one would expect.

R. 26. In addition to these activities, the ALJ noted that Christopher was not completely compliant with his treatment regimen, including with medical advice related to his diabetes, and that objective tests showed only mild or no abnormalities for both his diabetic peripheral neuropathy and lumbar degenerative disc disease. R. 27. Thus, the ALJ appropriately considered Christopher's daily activities as one factor in determining the extent to which symptoms affected his capacity to work. See e.g. Wooten v. Berryhill, No. 1:17-CV-190-DCK, 2018 WL 3014412,

at *5 (W.D.N.C. June 15, 2018) (noting that, "[i]nstead of simply equating an ability to perform daily activities with an ability to [work], the ALJ used evidence of Plaintiff's daily activities as just one factor in his ultimate RFC determination"); Heyward v. Berryhill, No. 8:16-CV-03003-JMC, 2018 WL 1417526, at *5 (D.S.C. Mar. 21, 2018) (finding that the ALJ did not err in considering plaintiff's activities of daily living, as 20 C.F.R. § 404.1529(c)(3)(i) provides that "claimant's daily activities is one factor the ALJ will consider when evaluating a claimant's symptoms, including pain").

Accordingly, I conclude that the ALJ's decision is supported by substantial evidence and that Christopher is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered:  January 5, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge